UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANDRE L. ANDERSON                    CIVIL ACTION NO. 10-cv-0529

VERSUS                               JUDGE HICKS

WARDEN, LOUISIANA STATE              MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Bossier Parish jury convicted Andre Anderson ("Petitioner") of second degree

murder.  The conviction was affirmed on direct appeal.  State v. Anderson, 942 So.2d 625

(La. App. 2d Cir. 2006), writ denied.  962 So. 2d 425 (La. 2007).  A post-conviction

application in state court was denied.  Petitioner now seeks federal habeas corpus relief on

several issues.  For the reasons that follow, it is recommended that the petition be denied.

**Facts**

The body of Richard "Hot Dog" Holloway was discovered in a wooded area near

Benton in Bossier Parish.  He had been shot multiple times, including twice to the head.

Carlos and Alice Stewart testified at trial that Petitioner was at their home several weeks later

for dinner when he told them that he had killed a man named Hot Dog because the man stole

three rocks of crack cocaine from him.  There was ample evidence that Petitioner was

involved in dealing crack, and most of the witnesses had multiple drug-related arrests and

convictions.

The Stewarts testified that Petitioner stayed late that night after dinner.  Alice eventually went to take a bath.  Carlos testified that Petitioner kept saying he was trying to get a ride from his girlfriend, and he often stepped outside to make calls.  Petitioner said at one point that he was going outside to investigate some gunshots they heard in the distance. He then returned with his hoodie pulled over his head and shot Carlos with a .45 caliber pistol, but Carlos survived.

A comparison of .45 caliber casings found near Hot Dog's body and casings found at the Stewart home show they were fired by the same weapon.  Police arrested Petitioner and charged him with second degree murder.  Latarsha Smith, Petitioner's girlfriend at the time of the murder, testified at trial that Petitioner came to her home the evening of the murder accompanied by Holloway and Daniel Lewis.  Petitioner told Smith that he wanted her to drive the men to a location near Benton where they were going to break in a house.

When they arrived at the location, pursuant to directions from Petitioner, the three men left the car.  Smith, waiting in the car, heard gunshots a few minutes later, and Petitioner and Lewis returned without Holloway.  Smith said she did not ask about Holloway because she was scared.  She drove the men home, and Lewis departed.  Smith asked Petitioner what he did it for, and Petitioner told her she did not have to worry because he would never hurt her.  Smith admitted that she heard Hot Dog had stolen dope from Petitioner, but Petitioner never told her about his business or why he killed Hot Dog.

Daniel Lewis testified that Petitioner told Lewis that if he saw Hot Dog to bring him to his house so the three men could go burglarize a home.  Lewis did so.  He claimed that he was unarmed that night and had no idea of Petitioner's plan to shoot Hot Dog.  After Smith dropped the three men off, they walked down the dirt path single file, with Holloway in the lead, followed by Petitioner and then Lewis.

Lewis testified that he saw Petitioner shoot Holloway in the head.  After Holloway fell, Petitioner stood at Holloway's feet and fired several more rounds at him.  Petitioner then gave Lewis a .22 caliber revolver and told him to shoot the victim so that Lewis would not be able to tell on him.  Lewis said that he was scared for his own life and was sure Holloway was dead, so he complied by shooting Holloway five or six times in the lower stomach area.  Lewis testified that Petitioner told him that he killed Holloway because the man had stolen crack cocaine from him.

**Jury Instruction**

A Louisiana statute, La. R.S. 15:432, provides examples of matters for which the law affords a presumption.  The list includes that a grand jury was legally constituted, that public officers have done their duty, a defendant is innocent and sane, and witnesses have told the truth.  At issue here is the presumption in the statute "that evidence under the control of a party and not produced by him was not produced because it would not have aided him."

Criminal defendants often point to witnesses or evidence not presented by the prosecution and ask the court for an instruction pursuant to the evidence-not-produced

provision of the statute.  See e.g., State v. Ballay, 757 So.2d 115, 129 (La. App. 5th Cir. 2000).  The charge was given in this case, but not in that ordinary context.

The court properly instructed the jury not to single out any instructions and disregard others, that Petitioner was presumed to be innocent until each element of the crime was proven beyond a reasonable doubt, that Petitioner was not required to prove that he is innocent, and that the burden was on the State to prove guilt beyond a reasonable doubt.  Tr. 549.  The court went on to give instructions regarding direct and circumstantial evidence and other traditional matters, in the manner often seen in Louisiana courts, where code articles and statutory provisions are read to the jury one after the other with little context or explanation. Sandwiched between an instruction on prior inconsistent statements and a caution that an indictment is not evidence was the following:

> The defendant is not required to testify or call any witnesses or to produce any evidence.  Evidence under the control of a party and not produced by him creates a presumption that it was not produced because it would not have aided him.

Tr. 552.  The second sentence, if used in an appropriate case and context, might be a proper instruction, but its usage in this case essentially told the jury that Petitioner did not have to testify *but* the jury could presume that if he did not take the stand it was because his testimony would have not helped his case.

In Griffin v. California, 85 S.Ct. 1229 (1965) the trial judge instructed the jury that a defendant had a constitutional right not to testify and that the exercise of that right does not

create a presumption of guilt or relieve the prosecution of its burden.  But the instruction also permitted the jury to "take that failure into consideration as tending to indicate the truth of [the State's] evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."  The Court held that this was error because the Fifth Amendment right against self-incrimination "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  85 S.Ct. at 1233.  See also  Carter v. Kentucky, 101 S.Ct. 1112 (1981).

Petitioner argues that the instruction in his case created an improper presumption in the prosecution's favor that Petitioner did not take the stand because it would not have aided him.  Petitioner first raised the claim in his post-conviction application.  The trial court rejected it because the instruction applied to both parties and did not specifically reference the defendant.  Tr. 97-99.  The appellate court denied a writ application with a short, generic statement that Petitioner did not carry his burden on any of the issues in his application.  Tr. 111.  The Supreme Court of Louisiana denied writs without comment.  Tr. 113.

It appears, however, that Petitioner is correct that the jury instruction in this case was unconstitutional.  The undersigned reached the same conclusion in another case from Bossier Parish.  Van Sales v. Warden, 2010 WL 1930109, **9-10 (W.D. La. 2010).  The trial court in the prior case described the instruction as "a standard instruction."  As in Van Sales, the undersigned strongly encourages the Bossier Parish prosecutors and courts to stop using that

instruction lest resulting convictions be subject to attack and overturning on appeal or collateral review.

The murder conviction need not be automatically vacated, however, because <u>Griffin</u> errors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis. <u>Chapman v. California</u>, 87 S.Ct. 824 (1967). When an error in a state criminal trial is first recognized by the federal habeas court, the test for harmless error is the standard in <u>Brecht v. Abrahamson</u>, 113 S.Ct. 1710 (1993), which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict. <u>Fry v. Pliler</u>, 127 S.Ct. 2321 (2007). <u>See also</u> <u>Davis v. Quarterman</u>, 237 Fed. Appx. 903, 908 (5th Cir. 2007) (applying <u>Brecht</u> to a <u>Griffin</u> claim).

Any error in the jury instruction in this case was harmless under the <u>Brecht</u> standard. The remainder of the jury instructions were appropriate and repeatedly emphasized the burden on the prosecution and the right of the defendant to neither testify nor present evidence. The prosecutor's closing arguments focused on the elements of the crime and the evidence that she presented. There was no reference to Petitioner not testifying. Tr. 509-23. The State presented strong evidence that Petitioner armed himself in advance, lured the victim into a trap, and shot him multiple times with a .45 pistol in retribution for stealing drugs. Petitioner was shown overwhelmingly to have shot the victim with the intent to kill or inflict great bodily harm. On this record, the error is harmless for habeas purposes.

**The Autopsy Report**

Dr. Cogswell performed an autopsy of the victim and prepared a written report.  By trial, Dr. Cogswell had moved to Florida, was in poor health, and was caring for his ill father. The prosecution arranged for Dr. George McCormick, the coroner in neighboring Caddo Parish, to testify about the findings of the report, but McCormick died less than a week before trial. The prosecutor represented that she had spoken to Dr. Cogswell, who said he was unwilling to obey the subpoena to testify because of the poor health of himself and his father.

Louisiana Code of Criminal Procedure Article 105 provides that: "A coroner's report and a proces verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact."  This is considered an exception to Louisiana's hearsay rules.  A law clerk, Kelly Curry, read the autopsy report to the jury.  Tr. 418-21.  The court reporter did not transcribe what she read, and the court has not been able to locate the report in the record.  The state appellate court stated that the report described the victim's cause of death as multiple gunshot wounds from indeterminate range that resulted in laceration of vital organs and blood loss.  The report detailed 12 wounds, two to the head, three to the chest, six to the abdomen, and one to the arm.  The report was described as routine, descriptive, and non-analytical.

Petitioner argued on direct appeal that the trial court should not have allowed the autopsy report to be read without an adequate determination the coroner was unavailable.

The state appellate court noted the trial judge's factual finding that Dr. Cogswell was unavailable and found the reading was not prejudicial, thus implicitly rejecting this argument. Petitioner also argued that, under Crawford v. Washington, 124 S.Ct. 1354 (2004), he had a right to cross examine the person who prepared the report.  He argued in his appellate brief that such cross-examination was required because only the person who prepared the autopsy could verify "which bullet wounds may have caused Richard Holloway's untimely death." The appellate court rejected the argument because any medical expert could have been called to address the issue, and Petitioner would have been guilty even if the shots fired by Lewis had been fatal.  State v. Anderson, 942 So.2d at 628-29.

Crawford held that out-of-court statements by a witness that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness, regardless of whether such statements might be deemed reliable.  Thus, a wife's out-of-court statements to police officers about her husband stabbing her violated the Confrontation Clause.  Crawford did not spell out a comprehensive definition of what would be testimonial but said that at a minimum it included prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations.  The court later held in Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009) that certificates of analysis sworn by analysts at a state laboratory, attesting that a substance analyzed was cocaine, were affidavits within the core class of testimonial

statements covered by the Confrontation Clause. See also Bullcoming v. New Mexico, 131 S.Ct. 2705 (2011) (applying Crawford to a blood-alcohol analysis report in a DWI case).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

The time-frame at issue is relevant to whether a state court adjudication ran afoul of a clearly established Supreme Court holding. At the time of the last state court adjudication on the merits of Petitioner's Confrontation Clause claim, the Supreme Court had issued Crawford but had not yet begun to clarify what would be considered testimonial, and it certainly had not extended the definition to include items such as lab reports.  Cases such as Melendez-Diaz and Bullcoming were not decided until later, so their holdings are not applicable to the habeas analysis in this case.  Greene v. Fisher, 132 S.Ct. 38 (2011).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011). A state court makes an unreasonable application of clearly established federal law when it identifies the correct

governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

The state appellate court held that the autopsy report was non-testimonial in nature so did not trigger the Crawford mandate for cross-examination.  It does not appear that this decision was contrary to or an unreasonable application of Crawford as the scope of that case was then understood and given the fairly clinical facts in the autopsy report that did not itself accuse Petitioner of anything.

There is a second obstacle to habeas relief even if it is assumed that the state court's decision was an objectively unreasonable  application of Crawford as it stood at the time of the state court decision.  A Confrontation Clause violation is subject to a harmless error analysis. See Bullcoming, 131 S.Ct. at 2719 n.11 (2011) (finding Confrontation Clause error and noting that "nothing in this opinion impedes a harmless-error inquiry on remand"); U.S. v. Harper, 527 F.3d 396, 400-01 n.3 (5th Cir. 2008).  As discussed above, a federal habeas court must assess the prejudicial impact of constitutional error in a state court criminal trial under the "substantial and injurious effect" standard of Brecht v. Abrahamson. Under Brecht, a federal court may grant habeas relief on account of constitutional error only if the error had a  substantial  and  injurious  effect  or  influence  in  determining  the  jury's  verdict.   The petitioner should prevail under this standard when the record is so evenly balanced that a

conscientious judge is in grave doubt as to the harmlessness of the error. <u>Horn v. Quarterman</u>, 508 F.3d 306, 322 n.24 (5th Cir. 2007).

Petitioner argued in his appellate brief that he wanted to be able to cross-examine the coroner about which round was fatal.  As the state court noted, that inquiry would not help avoid conviction because it does nothing to address the undisputed evidence that Petitioner shot the victim in the head with a .45 and fired multiple other rounds into his body before the second shooter fired the smaller caliber weapon into the victim's abdomen.  Even if the coroner were to believe that the small caliber rounds to the abdomen were the fatal ones, shooting a man in the head, followed by more rounds to the body, is overwhelming evidence of specific intent to kill or inflict great bodily harm. That is all that is necessary for a conviction of second degree murder.  Petitioner makes a slightly different argument in his habeas petition that Dr. Cogswell could have "possibly" supported a theory that the victim was killed by multiple gunshots to the abdomen, then shot in the head while he was already dead.  There was, however, zero evidence to support that theory, and it is extraordinarily unlikely that any medical expert could have supported it.  Any <u>Crawford</u> mistake in the admission of the autopsy report was, in the context of this case, harmless.  <u>See</u> <u>Russell v. Cooper</u>, 09-CV-2139 (W.D. La.) (reaching similar conclusion in challenge to admission of autopsy report).

**Other Crimes Evidence**

Louisiana law provides that evidence of other acts of misconduct are generally not admissible because of the risk the defendant will be convicted of the present offense because the unrelated evidence establishes him as a bad person.  Evidence of other crimes may be admissible, however, if the State establishes an independent and relevant reason such as proof of identity, and the probative value outweighs its prejudicial effect.  The prosecution typically must give pretrial notice of intent to use such evidence and make a proper showing before it is admitted.

Petitioner argued on direct appeal that the trial court erred when it allowed the Stewarts to testify about his alleged shooting at their home, without first conducting a hearing pursuant to State v. Prieur, 277 So.2d 126 (La. 1973).  The state appellate court found that the State did give pretrial notice of intent to use other crimes evidence in two separate pleadings and, early in the trial, the court heard arguments on the issue and ruled the evidence admissible.  Identity of the person who fired the murder weapon was a key issue, and the Stewart testimony linked Petitioner directly to the weapon.  The state court thus found no error in admitting the evidence.  State v. Anderson, 942 So.2d at 629-30.

Petitioner's argument does not permit habeas relief because federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied.  Only federal constitutional errors that satisfy the demanding standards of 28 U.S.C. § 2254 merit habeas relief. The Due

Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).

Petitioner's state court brief framed this issue solely in terms of Louisiana law such as Prieur. He did not, therefore, properly exhaust a federal claim that is cognizable in habeas. Baldwin v. Reese, 124 S.Ct. 1347 (2004) (claim in state court petition for ineffective assistance of appellate counsel not exhausted because not identified as federal in nature). Petitioner's attempt to recast the issue as a federal one in his habeas petition comes too late. In any event, it appears that the trial judge acted well within his discretion in electing to admit the evidence under these circumstances.

**Prosecutorial Misconduct**

**A. Introduction**

Petitioner argued in his post-conviction application that the prosecutor engaged in misconduct when she (1) solicited from witnesses hearsay and other crimes evidence for which the State did not give pretrial notice, (2) vouched for the credibility of witnesses, and (3) improperly commented on defense counsel's lack of cross-examination of State witnesses. Decisions often discuss prosecutorial misconduct in situations such as where prosecutors attempt to inject prejudice into the trial by introducing inadmissible evidence or making inappropriate statements during opening and closing statements. Buffington v.

Copeland, 687 F.Supp. 1089, 1095 (W.D. Tex. 1988).  Such misconduct does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986).  The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

**B. Other Crimes; Drug Dealing**

The prosecutor asked Latarsha Smith, Mr. and Mrs. Stewart, and Daniel Lewis if Petitioner had told them why he killed Hot Dog.  Each testified that Petitioner sold crack cocaine, Hot Dog was a customer, and Petitioner said he killed Hot Dog because he had stolen his crack.  Petitioner argued in his post-conviction application that these questions introduced evidence of other crimes (drug dealing) for which there had not been proper pretrial notice.  The State trial court noted that, to warrant relief, the reference must be to another crime as to which evidence is not admissible and substantial prejudice results.  The court ultimately did not address the merits because it found the claim was procedurally barred because it had been raised on direct appeal.  A review of Petitioner's appellate brief and the appellate decision, however, show that the other crimes argument on direct appeal was focused on admission of the shooting at the Stewart home rather than the drug dealing.  In any event, the State has not attempted to assert a procedural bar defense to this claim.

Relief is not warranted on the merits of the claim because there is no doubt the court would have ruled the evidence admissible had the prosecutor given pretrial notice as argued for by Petitioner.  Other crimes evidence is generally not admissible, but a well-known exception is when the evidence has independent relevance to motive.  La. C.E. art. 404(B)(1). The drug-dealer evidence was directly relevant to motive and almost certainly would have been ruled admissible by any reasonable judge.  The prosecutor may have fallen short of Louisiana procedural requirements for giving pretrial notice of such evidence, but when the issue is viewed in light of the entire record there is no basis to find a due process violation that would warrant vacating the conviction.

### C. Vouching for Witnesses

Petitioner next argues that the prosecutor made improper comments in her closing argument by vouching for the credibility of witnesses.  The prosecutor argued that her witnesses should be believed because they testified despite their admitted fear.  She emphasized that there was no evidence contrary to the State's position that Petitioner killed the victim.  She then returned to credibility:

> And when you weigh the credibility of the witnesses, do you think to yourself, well, yeah, the girlfriend, she - she could have been lying or this person could have been lying?  You know, sometimes the things that some people say are not the way we would say them, but - *but those people were being honest up there*.  I asked them about their criminal history - just right on, never missed a beat.  They didn't try to hide that.  They didn't try to hide anything.

Tr. 516-17.

It is improper for a prosecutor to vouch for the credibility of witnesses because the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence.  U.S. v. Young, 105 S.Ct. 1038 (1985).  "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses."  U.S. v. Gracia, 522 F.3d 597, 600 (5th Cir. 2008).

Petitioner raised this claim in his post-conviction application.  Tr. 63-65.  The trial court acknowledged the claim in the beginning of its written decision, but the claim was never addressed on the merits or otherwise.  Tr. 97.  The state appellate court did not address the claims individually but generally held that Petitioner had failed to carry his burden of proving that relief should be granted.  Tr. 111.  When a state court issues an order that summarily rejects without discussion all claims raised by a defendant, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S.Ct. 1088 (2013); Harrington v. Richter, 131 S.Ct. 770 (2011). The state appellate court's broad rejection of the entire application appears to be sufficient to warrant deference to the state court decision as required by Section 2254(d).

The prosecutor's statement that the witnesses "were being honest up there" was arguably improper, but it was not couched in language that directly reflected the prosecutor's personal belief in their honesty.  Rather, it was part of an overall discussion of the factors (testimony despite fear of retribution, honesty about criminal history and involvement, etc.)

Page 16 of  22

that should persuade the jury the witnesses were honest.  This one reference, in the context of the argument, and considering the entire record, did not infect the trial with unfairness and does not present any reasonable basis to believe that a conviction would not have occurred but for the isolated remark.  This court cannot say that the state court's rejection of this claim was an objectively unreasonable application of clearly established Supreme Court precedent, so relief is not available.

### D. Comment on Lack of Cross-Examination

Petitioner argues that the prosecutor improperly commented on defense counsel's lack of cross-examination of prosecution witnesses.  The claim originates in defense counsel's closing argument in which he discussed the credibility of each key witness.  With regard to Daniel Lewis, he noted that Lewis had never been charged as a principal to the murder, had a letter written on his behalf to seek a reduced penalty for a federal charge, and his story "just didn't make sense."  Counsel particularly pointed to Lewis's claim that he did not break into houses yet was comfortable going with the other two men that evening.  Tr. 530-32.  The prosecutor responded in rebuttal that the jury should remember that defense counsel "had every chance to cross-examine" Lewis and ask him any of the questions raised during closing argument.  "[W]hy if he wants to know the answers to those questions, why didn't he ask?  He didn't."  Tr. 544.

A prosecutor's comment on a defendant's failure to testify violates the Fifth Amendment right against self-incrimination.  <u>Griffin v. California</u>, 85 S.Ct. 1229 (1965).

But the remarks made by the prosecutor must be considered in context.  U.S. v. Delgado, 672 F.3d 320, 335 (5th Cir. 2012) (en banc).  The Fifth Amendment is violated if the prosecutor's manifest intent must have been to comment on the defendant's silence or if the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.  Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003).  There is no manifest intent to comment on a defendant's failure to testify if there is another equally plausible explanation for the prosecutor's remarks.  The relevant question is not whether a jury possibly or even probably would construe the argument as a comment on the defendant's silence, but whether a jury would necessarily construe it as such.  Lee v. Michael, 2012 WL 1621369 (5th Cir. 2012).

The prosecutor in this case said nothing about Petitioner's failure to testify.  Her point about the lack of cross-examination merely emphasized the strength of the State's case and commented on the failure of the defense, as opposed to the defendant, to counter or explain the State's evidence.   That kind of argument does not infringe the Fifth Amendment privilege.  See Montoya v. Collins, 955 F.2d 279, 287 (5th Cir. 1992); Lee v. Michael, supra. A jury would not necessarily construe the argument as a comment on Petitioner's silence, so the argument did not run afoul of Griffin.  Petitioner has not cited any Supreme Court case that clearly establishes that a prosecutor may not point to the lack of cross-examination of State witnesses.  Accordingly, Petitioner has not satisfied the standard of Section 2254(d) to obtain habeas relief on this claim.

**Ineffective Assistance of Counsel**

Petitioner argued in his post-conviction application, and in this court, that his counsel was ineffective because he (1) did not object to the jury instruction challenged above and (2) did not object to the purported prosecutorial misconduct of presenting hearsay and inadmissible other crimes evidence of drug selling. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

The trial court rejected this claim but without specifically addressing the lack of objection to other crimes evidence or the alleged admission of hearsay when the witnesses testified Petitioner told them he killed Hot Dog for stealing crack.  The trial court did point out that defense counsel generally raised several hearsay and evidentiary objections, but it did not address the omitted objection about which Petitioner complained in his post-conviction application. Tr. 104-09.  The state appellate court generally rejected all claims for lack of merit, so once again it will be presumed that these claims were adjudicated on the merits for purposes of Section 2254(d).

Section 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v.

Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

There was no basis for counsel to make a hearsay objection when the witnesses testified that Petitioner told them that he killed Hot Dog for stealing his crack.  A statement is not hearsay if it is offered against a party and is his own statement.  La. Code Evidence art. 801(d)(2)(A).  Counsel may not be faulted for not making a meritless objection.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002).

Counsel might have raised a reasonable objection to the admission of the other crimes evidence (drug dealing) for lack of proper pretrial notice and hearing, but there is no basis to believe the outcome would have been different had the objection been raised.  As discussed above, it is almost certain that a trial judge would have admitted the evidence, despite the lack of pretrial proceedings, given the lack of any indication of actual surprise to the defense and the strong relevance of the testimony to motive for the murder.

Counsel could also have raised a reasonable objection to the jury instruction discussed above but, once again, there is no reason to believe that the outcome was different due to the presence of the instruction. Any reasonable person who reviews the record will conclude that, with or without the challenged sentence in the jury instruction, the verdict would be the same. There was no emphasis on the challenged instruction or reference by the court or prosecutor to Petitioner not testifying.  The state court's adjudication of this and the other ineffective assistance claims may be debatable, but it certainly was not so incorrect as to be an objectively unreasonable application of the general <u>Strickland</u> standard, particularly its prejudice prong.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of March, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE